UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-80035-RLR

BRYANT GRANT,

    Plaintiff,

v.

CITY OF WEST PALM BEACH and
ROMARIO A. SAUNDERS, individually,

    Defendants.

_____/

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**THIS CAUSE** arises out of the alleged unlawful seizure and use of excessive force against Plaintiff Bryant Grant by Defendant Romario A. Saunders ("Saunders"), an officer employed by Defendant City of West Palm Beach (the "City"). DE 5.  Plaintiff asserts the following counts against Defendants: (I) unlawful seizure in violation of the Fourth Amendment against Saunders; (II) false imprisonment against Saunders; (III) battery against Saunders; (IV) negligence against Saunders; (V) vicarious liability against the City; (VI) negligent hiring, retention, and supervision against the City; (VII) use of excessive force in violation of the Fourth Amendment against Saunders; (VIII) unconstitutional policy or custom in violation of the Fourth and Fourteenth Amendments against the City; and (IX) violations of 42 U.S.C. §§ 1981 and 1983 equal protection against the City. *Id.*

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). DE 12.  The Court has reviewed the Motion, Plaintiff's Response [DE 17], Defendant's Reply [DE 18], and the record

and is otherwise fully advised in the premises. For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART and DENIED IN PART** as more fully set forth in this Order.

## I. FACTUAL ALLEGATIONS

Plaintiff alleges the following. ShotSpotter is a technology that identifies potential gunfire incidents through microphone sensors. DE 5 ¶ 11. The City has primarily deployed ShotSpotter in predominantly Black neighborhoods, including Roosevelt Estates, *id.* ¶ 12, which has resulted in unlawful stops and arrests. *Id.* ¶ 13.

On August 12, 2023, Saunders and other officers were dispatched to 9th Court in Roosevelt Estates due to a ShotSpotter alert. *Id.* ¶ 15. The officers were directed to a location over 160 feet away from the GPS coordinates associated with the ShotSpotter alert. *Id.* ¶ 15. There was no evidence of gunfire at the location reported by ShotSpotter, nor the location to which Saunders and the other officers were directed. *Id.* ¶ 16.

That same evening, Plaintiff was walking on 9th Court, where he lived. *Id.* ¶ 17. Saunders shouted at Plaintiff, commanding him to raise his hands and turn around. *Id.* ¶ 18. Plaintiff complied, raising his hands and turning. *Id.* ¶ 19. Plaintiff then lowered his arms and asked a question. *Id.* Saunders lunged at Plaintiff, attempting to grab his wrist. *Id.* Plaintiff retreated, and Saunders tackled Plaintiff, causing Plaintiff to fall and suffer fractures in his left leg. *Id.* ¶ 20. Saunders held Plaintiff down until other officers arrived, who then physically assaulted Plaintiff before handcuffing him. *Id.* ¶ 21.

## II. STANDARD OF REVIEW

A court may grant a motion to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss

2

should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

A court ruling on a motion to dismiss a complaint accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). The court need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019). Dismissal for failure to state a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the [plaintiff's] allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III.   ANALYSIS

Defendants have moved to dismiss Plaintiff's Complaint for failure to state a claim. DE 12. The Court first addresses Plaintiff's constitutional and state-law claims against Saunders and then Plaintiff's claims against the City.

A.     **Constitutional Claims Against Defendant Saunders**

Plaintiff brings 42 U.S.C. § 1983 causes of action against Saunders for unreasonable seizure (Count I) and excessive force (Count VII) in violation of the Fourth Amendment. DE 5 at 5, 11.

1. Count I – Unreasonable Seizure

Defendants first argue that Plaintiff has failed to state a claim for unreasonable seizure because Saunders had reasonable suspicion and probable cause, and—relatedly—because the affirmative defense of qualified immunity applies. *See* DE 12 at 4–5. "Qualified immunity shields government officials from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a 'clearly established' constitutional right." *Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018). The applicability of qualified immunity presents a question of law for a court to decide. *Sims v. Metro. Dade Cty.*, 972 F.2d 1230, 1234 (11th Cir. 1992). If an officer establishes that he was acting within his discretionary authority,[1] the burden shifts to the plaintiff to show that the officer violated a constitutional right that was clearly established at the time of the incident. *Montanez*, 889 F.3d at 1207. One method to determine whether a right is clearly established is if, under the relevant case law at the time of the violation, "a concrete factual context exists so as to make it obvious to a reasonable government actor that his actions violate federal law." *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011) (citation and alterations omitted).

---

[1] To be entitled to qualified immunity, an officer must establish that he was acting within his discretionary authority during the incident. *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018). The officer proves that he acted within his discretionary authority "by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (quotation marks omitted). Here, Plaintiff has alleged that Saunders acted at all material times within the scope of his employment with the City. DE 5 ¶ 8; *see also Grider v. City of Auburn*, 618 F.3d 1240, 1268 (11th Cir. 2010) (stating that police investigations and arrests are discretionary functions).

4

The Court therefore begins the qualified immunity analysis with the question of whether, as pled, Saunders conducted an unreasonable seizure and therefore violated a constitutional right that was clearly established at the time of the incident. The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its protections extend to brief investigatory stops that fall short of traditional arrests. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A brief investigatory stop must be supported by the officer's reasonable suspicion that criminal activity may be afoot. *Id.* This suspicion must be more than a mere "hunch," *id.* at 274, and based on "specific and articulable facts," *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The Court must consider the totality of the circumstances to determine whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273.

Defendants argue that Plaintiff has failed to state a claim for unreasonable seizure. DE 12 at 4. Defendants assert that Saunders had reasonable suspicion to conduct an investigatory stop because Plaintiff was in the area where ShotSpotter had directed the officers. *Id.* Defendants further argue that once Plaintiff "refused to keep his hands up as commanded" and "tried to escape," Saunders had probable cause for obstruction or resisting arrest without violence. *Id.* at 5. Defendants therefore assert that it was reasonable for Saunders to arrest and hold Plaintiff to the ground until backup arrived. *Id.*

Based on the allegations in Plaintiff's Complaint, however, the Court disagrees that Saunders had reasonable suspicion to stop Plaintiff. As to the ShotSpotter alert, Plaintiff alleges that ShotSpotter is acoustic surveillance technology that uses microphone sensors to identify potential gunfire incidents. DE 5 ¶ 11. Plaintiff alleges that Saunders and other officers were dispatched to a location over 160 feet away from the GPS coordinates associated with a

5

ShotSpotter alert. *Id.* Plaintiff alleges that there was no evidence of gunfire at the location reported by ShotSpotter, no evidence of gunfire at the location to which Saunders was directed, and no 911 calls about any shooting in the area. *Id.* ¶ 16. Plaintiff alleges no other detail about the ShotSpotter alert. Without further allegations—concerning, for example, the reliability of the technology, the time elapsed between the alert and the incident at issue, whether the officers encountered any other individuals, or why ShotSpotter directed officers to a different location from the site of the alert— the Court is unable to contextualize the reasonableness of Saunders's reliance on the ShotSpotter alert.[2]

Without context about the ShotSpotter technology, the Complaint alleges only that when Plaintiff was walking on the street, Saunders shouted at Plaintiff and commanded him to raise his hands and turn around based "solely on an inaccurate ShotSpotter alert and the fact that Plaintiff was the first individual encountered in the area." *Id.* ¶¶ 17–18, 27. Based on Plaintiff's allegations, the ShotSpotter alert is similar to an uncorroborated tip about a gunshot.[3] The fact that Plaintiff was the first person whom Saunders encountered near the reported gunshot does not meaningfully distinguish Plaintiff from the public in any way that gives rise to an objective, particularized suspicion toward Plaintiff. *See, e.g.*, *United States v. Heard*, 725 F. App'x 743, 752 (11th Cir. 2018) (finding no reasonable suspicion because, among other reasons, the fact that the plaintiff was the only person present around the time and near the place where gunshots were heard "only

---

[2] Defendants argue that Florida as well as other jurisdictions have determined that ShotSpotter technology is reliable. *Id.* at 4 (citing *J.A.R. vs. State of Florida*, 374 So. 3d 25, 31 (Fla. Dist. Ct. App. 2023)). Defendants, however, cannot premise their affirmative defense of qualified immunity on facts not pled in the complaint. Furthermore, Defendants have cited only to a case holding that the state trial court did not abuse its discretion in admitting expert testimony regarding the ShotSpotter technology and finding that the testimony met the *Daubert* test. *See J.A.R.*, 374 So. 3d at 31.
[3] The Court draws this analogy because of the scarce information pled about the ShotSpotter technology in the Complaint. The Court recognizes that after the motion-to-dismiss stage, when additional evidence outside of the pleading may be considered, this analogy may no longer be appropriate.

very generally linked [the plaintiff] to the gunshots"); *United States v. Ballard*, 573 F.2d 913, 915–16 (5th Cir. 1978) (finding no reasonable suspicion based on an uncorroborated tip because the circumstances—plaintiff's nervousness in an airport, his hurried walking while carrying little baggage, and the suspicion that the plaintiff had arrived from a known narcotics source city—"d[id] not in any significant way operate to distinguish [the plaintiff] from the general public").

Defendants also argue that Saunders had probable cause for obstruction or resisting arrest when Plaintiff "refused to keep his hands up as commanded" and "tried to escape." DE 12 at 5. Probable cause requires that "an arrest must be objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). This standard is met when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citation and quotation marks omitted).

Based on this standard, the Court disagrees with Defendants' argument that Saunders had probable cause. Plaintiff does not allege that he tried to escape. Plaintiff alleges that he "complied" with Saunders's directive to raise his hands and turn around, DE 5 ¶¶ 18–19; he then "lower[ed] his arms and ask[ed] a question," *id.* ¶ 19; Saunders "lunged at Plaintiff, attempting to grab his wrist," *id.*; Plaintiff "retreated," *id.* ¶ 20; Saunders "tackled Plaintiff, causing Plaintiff to fall and suffer fractures in his left knee and leg," *id.* ¶ 20; and then Saunders held Plaintiff down "until other officers arrived, who then physically assaulted Plaintiff," *id.* ¶ 21.

Construing these allegations in Plaintiff's favor, simply lowering one's arms to ask a question—after already turning to face the officer with arms raised in compliance—does not give

7

rise to probable cause that Plaintiff was engaging in obstruction. *Id.* ¶ 19.  And as pled, Plaintiff's "retreat" may be construed as a natural reflex to being lunged at by Saunders, and not the escape attempt that Defendants argue.  Based on Plaintiff's allegations, the Court does not find that Plaintiff's arrest was objectively reasonable based on the totality of the circumstances.

Plaintiff's Complaint has sufficiently alleged that Saunders violated Plaintiff's clearly established constitutional right to be free from unreasonable seizure.  Defendant's motion to dismiss is therefore **DENIED** as to Plaintiff's unreasonable seizure claim against Saunders.

2. Count VII – Excessive Force

Defendants argue that Plaintiff's excessive force claim against Saunders should be dismissed because it is subsumed in his unreasonable seizure claim and because the defense of qualified immunity applies. DE 12 at 5.  The freedom from unreasonable searches and seizures under the Fourth Amendment encompasses a right to be free from the use of excessive force during an arrest. *Durruthy v. Pastor*, 351 F.3d 1080, 1093 (11th Cir. 2003).  The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Manners v. Cannella*, 891 F.3d 959, 973 (11th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  To determine whether the force used was proper, a court must ask whether a reasonable officer would believe that the force was necessary in the situation at hand. *Lee*, 284 F.3d at 1197.  Reasonableness is dependent on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Defendants argue that Plaintiff's excessive force claim is subsumed in his unreasonable seizure claim because the former "is predicated solely on allegations that the arresting officer lacked the power to make an arrest." DE 12 at 5.  As support, Defendants cite to *Bashir v. Rockdale County*, 445 F.3d 1323 (11th Cir. 2006), and the fact that Plaintiff alleges that Saunders's "use of force was unreasonable under the circumstances because there was no individualized reasonable suspicion" regarding Plaintiff. DE 12 at 5–6, DE 5 ¶ 73.  In *Bashir*, however, the plaintiff had argued that *any* force used in an unlawful arrest is excessive force sufficient to give rise to a discrete Fourth Amendment claim. 445 F.3d at 1332.  The Eleventh Circuit held that in this circumstance, the excessive force claim "is entirely derivative of" the unlawful arrest claim. *Id.*

Unlike in *Bashir*, Plaintiff here has not alleged that Saunders's force was unreasonable *solely* because Saunders lacked reasonable suspicion.  Plaintiff has also alleged that Saunders "used excessive and unreasonable force" when Saunders "tackled Plaintiff, . . . forcing him to the asphalt and breaking his left leg." DE 5 ¶ 72.  The Eleventh Circuit describes this as a "'genuine' excessive force claim because it 'relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest.'" *Martin v. Miami Dade Cnty.*, No. 23-10841, 2024 WL 1434329, at *5 (11th Cir. Apr. 3, 2024) (citation omitted).  "When a false arrest claim and a 'genuine' excessive force claim stem from the same incident, the two claims 'must be analyzed independently.'" *Id.* (citation omitted).

Based on Plaintiff's allegations, Saunders's use of force—tackling Plaintiff, forcing Plaintiff to the asphalt, and breaking Plaintiff's left leg—came after Plaintiff had complied with Saunders's initial directions, lowered his hands to ask a question, and then "retreated" after Saunders "lunged at" and "attempt[ed] to grab" Plaintiff.  The allegations do not indicate that

9

Plaintiff posed an immediate threat to Saunders's or others' safety, nor that Plaintiff was actively resisting or attempting to evade arrest. These allegations, construed in Plaintiff's favor, indicate that Saunders's use of enough force to break Plaintiff's leg was not "reasonably proportionate to the need for that force," violating Plaintiff's clearly established constitutional right to be free from excessive force. *See Ingram v. Kubik*, 30 F.4th 1241, 1251 (11th Cir. 2022); *see also Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (characterizing as gratuitous force an officer slamming a non-resisting suspect's head into the ground).

Defendant's motion to dismiss is therefore **DENIED** as to Plaintiff's excessive force claim against Saunders.

## B. State Law Claims Against Defendant Saunders

Plaintiff seeks to bring three state-law claims against Saunders for false imprisonment (Count II), battery (Count III), and negligence (Count IV). Defendants argue that all three claims should be dismissed because Plaintiff has alleged that Saunders acted within the scope of his employment, DE 5 ¶ 8, and Florida Statute § 768.28(9)(a) grants individual immunity to government employees acting within the scope of their employment unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

For similar reasons that the Court denied Defendants' argument that qualified immunity applies to Plaintiff's constitutional claims against Saunders, the Court also denies Defendants' arguments that Saunders is immune to Plaintiff's state-law claims as follows.

1. Count II – False Imprisonment

False imprisonment is the unlawful restraint of a person against his will. *Baxter v. Roberts*, 54 F.4th 1241, 1271 (11th Cir. 2022). An officer may lawfully stop a person based on reasonable suspicion. *See id.* at 1272. Similarly, probable cause also bars a false imprisonment claim against an officer. *Whittington v. Surfside*, 490 F. Supp. 2d 1239, 1256 (S.D. Fla. 2007).

Plaintiff has alleged facts to support the assertion that Saunders did not have reasonable suspicion or probable cause to restrain Plaintiff, which could support a finding that Saunders acted willfully, maliciously, or in bad faith such that Saunders's immunity is waived. *See* Part A.1.

The Court therefore **DENIES** Defendants' motion as to Plaintiff's false imprisonment claim against Saunders.

2. Count III – Battery

Battery involves the intent to cause a harmful or offensive contact that results in an offensive contact with another's person. *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996). In the context of an arrest, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Id.* "If excessive force is used in an arrest, the ordinary protected use of force by a police officer is transformed into a battery." *Id.*

Plaintiff has alleged facts to support the assertion that Saunders's use of force was unreasonable under the circumstances, which could support a finding that Saunders acted willfully, maliciously, or in bad faith such that Saunders's immunity is waived. *See* Part A.2.

The Court therefore **DENIES** Defendants' motion as to Plaintiff's battery claim against Saunders.

### 3. Count IV – Negligence

"To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001).

Defendants argue that Plaintiff's negligence claim is "clearly frivolous" because Plaintiff has alleged that Saunders acted within the scope of his employment and therefore is immune under Florida Statute § 768.28(9)(a). The Eleventh Circuit has contemplated, however, that an officer's decision to arrest—as well as the officer's actions that occurred after making the initial decision to arrest—could be susceptible to a suit for negligence. *See Lewis*, 260 F.3d at 1263. And in Florida, when a "defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty [to all within the zone] placed upon [the] defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Id.* (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989) (alterations in original)).

Plaintiff has alleged that Saunders owed a duty of care to Plaintiff to act reasonably and avoid causing harm to Plaintiff, and that Saunders breached this duty by negligently initiating and escalating an unnecessary physical confrontation with Plaintiff. DE 5 ¶¶ 47–48. When Saunders decided to stop Plaintiff, Saunders's conduct arguably created a foreseeable zone of risk, imposing a duty on Saunders to lessen that risk or impose sufficient precautions. Plaintiff alleges that instead, Saunders breached his duty by physically escalating the confrontation, resulting in injury to the Plaintiff.

Therefore, for the same reasons that Plaintiff has adequately alleged claims for false imprisonment and battery, Plaintiff has also sufficiently alleged that Saunders acted negligently, "in a manner exhibiting wanton or willful disregard of human rights," such that immunity may not apply.

Defendants' motion to dismiss is **DENIED** as to Plaintiff's negligence claim against Saunders.

C.   **Claims Against Defendant City of West Palm Beach**

Plaintiff has sued the City for vicarious liability (Count V); negligent hiring, retention, and supervision (Count VI); unconstitutional policy or custom (Count VIII); and violations of 42 U.S.C. §§ 1981 and 1983 equal protection (Count IX).

1. Count V – Vicarious Liability

Plaintiff has sued the City under the doctrine of *respondeat superior* for the actions of Saunders. The limited waiver of sovereign immunity in tort actions against Florida governmental agencies provides that:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Florida Statute § 768.28(9)(a). "The question of whether an act was committed with malicious purpose, bad faith, or with wanton and willful disregard is not a question that must be submitted to a jury, but rather, can be decided by the Court depending on the facts." *Blue v. Miami-Dade Cnty.*, No. 10-23599-CIV, 2011 WL 2447699, at *2 (S.D. Fla. June 15, 2011) (citing *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004)). "Certain intentional torts cannot be characterized

as anything but acts committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* (citation and quotation marks omitted).

Plaintiff has alleged that Saunders's wrongful acts occurred during the course of his employment with the City and in the furtherance of his official duties. DE 5 ¶ 58. Plaintiff's other allegations, however, do not sufficiently state a claim for vicarious liability. Plaintiff alleges that, based on the equivalent to an uncorroborated tip, Saunders stopped Plaintiff when he was walking on the street—that is, Saunders stopped Plaintiff without reasonable suspicion. *See* Part A.1. Plaintiff alleges that Saunders then arrested Plaintiff without probable cause, *see* Part A.1, and used excessive force in carrying out that unlawful arrest, *see* Part A.2. Plaintiff alleges that Saunders "assaulted and battered Plaintiff." DE 5 ¶ 57. Plaintiff's allegations were sufficient for the Court to deny Defendants' arguments that qualified immunity applies to Saunders. *See* Parts A–B. Similarly, Plaintiff's allegations indicate that Saunders acted with malicious purpose, bad faith, or a wanton and willful disregard toward Plaintiff.

Therefore, because Plaintiff's allegations are insufficient to establish a waiver of sovereign immunity, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's vicarious liability claim against the City.

2. Count VI – Negligent Hiring, Retention, and Supervision

Plaintiff next sues the City for negligently hiring, retaining and/or failing to supervise Saunders. "Unlike the theory of respondeat superior where an employer faces liability for an employee's acts committed within the course or scope of employment, the tort of negligent hiring or retention under Florida law 'allows for recovery against an employer for acts of an employee

14

committed outside the scope and course of employment.'" *Belizaire v. City of Miami*, 944 F. Supp. 2d 1204, 1214 (S.D. Fla. 2013) (citation omitted). This occurs "when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. Dist. Ct. App. 2005).

Although Plaintiff has pled facts to indicate that Saunders acted outside the scope of his employment with the City, Plaintiff has failed to plead any specific facts to support Plaintiff's claim that the City negligently hired, retained, or supervised Saunders. Plaintiff's allegations are conclusory. For example, Plaintiff alleges that the City hired and/or retained Saunders "despite evidence or knowledge that he was unfit for duty," without alleging any specific basis for that knowledge. DE 5 ¶ 67. Plaintiff has not alleged any fact that would have put the City on notice—before the subject incident—that Saunders was unfit.

Because the Court need not accept conclusory allegations as true, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's negligent hiring, retention, and supervision claim against the City. *Oxford Asset Mgmt., Ltd., v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

    3. <u>Count VIII – Unconstitutional Policy or Custom</u>

Plaintiff asserts under 42 U.S.C. § 1983 that the City violated the Fourth and Fourteenth Amendments with the unconstitutional policy or custom of "allowing its law enforcement officers to use ShotSpotter alerts to substitute for the individualized reasonable suspicion required under the Fourth Amendment." DE 5 ¶ 77. To impose § 1983 liability on a municipality, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom

15

or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). A plaintiff can establish a municipality's policy through either (1) an officially promulgated policy or (2) an unofficial custom or practice of the municipality shown through the repeated acts of a final policymaker for the municipality. *See Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Plaintiff has not specified whether his claim rests on an officially promulgated policy or on an unofficial custom or practice, and the Court construes Plaintiff's claim as the latter. *See Grech*, 335 F.3d at 1330 ("Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is the moving force [behind] the constitutional violation." (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)) (quotation marks omitted)).

Plaintiff's allegations fall short of a *Monell* claim. First, Plaintiff has not identified "those officials who speak with final policymaking authority for [the municipality] concerning the act alleged to have caused the particular constitutional violation in issue." *Id.* at 1330 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Second, Plaintiff has failed to "show a longstanding and widespread practice." *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (citation and quotation marks omitted). This requires "considerably more" than a single incident of a constitutional violation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). Plaintiff alleges that the City's use of ShotSpotter "has led to unconstitutional policing practices, resulting in unlawful stops and arrests,"

but provides no further specifics beyond the underlying incident between Plaintiff and Saunders. DE 5 ¶ 13. Plaintiff has alleged no similar incidents to establish a widespread practice that is "obvious, flagrant, rampant and of continued duration that would establish a causal connection between actions of the supervising official and the alleged constitutional violation." *Gaviria v. Guerra*, No. 17-23490-CIV, 2018 WL 1876124, at *6 (S.D. Fla. Apr. 19, 2018) (quoting *Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015)).

Defendants' Motion is therefore **GRANTED** as to Plaintiff's claim against the City for an unconstitutional policy or custom.

4.  Count IX – Violations of 42 U.S.C. §§ 1981 and 1983 Equal Protection

Lastly, Plaintiff sues the City for violating Plaintiff's rights to equal protection. DE 5 ¶ 81. The Equal Protection Clause of the Fourteenth Amendment prohibits state officials from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. Procedurally, an equal protection claim is brought through § 1983. *Bush v. Houston County Com'n*, 414 F. App'x 264, 266 (11th Cir. 2011) (citing *Williams v. Bd. of Regents of Univ. Sys. Of Ga.*, 477 F.3d 1282, 1299 (11th Cir. 2007)).

"[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately." *Thigpen v. Bibb County*, 223 F.3d 1231, 1237 (11th Cir. 2000) *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). As pled, Plaintiff appears to premise his equal protection claim on disparate treatment based on a racially discriminatory practice of deploying ShotSpotter in areas that are "occupied predominately by residents who are Black, Latino, or Hispanic." DE 5 ¶¶ 85–93. Plaintiff alleges that ShotSpotter sensors, in contrast, "are mostly absent from areas with

17

predominately White residents." *Id.* ¶ 86. Plaintiff alleges that therefore, the predominately Black, Latino, or Hispanic residents of the areas in which ShotSpotter sensors are concentrated are "exposed to a heightened risk of detention, invasive frisking, bodily injury, arrest, and criminal prosecution." *Id.* ¶ 90. Because "[t]he residents of the predominately White areas are not subjected to these heightened risks," *id.* ¶ 92, Plaintiff alleges that the City's "placement of ShotSpotter sensors, together with its policy of allowing ShotSpotter alerts to substitute for individualized reasonable suspicion, violate residents' rights to equal protection of the laws," *id.* ¶ 93.

"To prevail on a § 1983 equal protection race discrimination claim," however, "a plaintiff has to establish discriminatory motive or purpose, not merely disparate impact." *Lambert v. Bd. of Trs. of Univ. of Alabama*, No. 2:18-CV-1112-JEO, 2019 WL 339178, at *10 (N.D. Ala. Jan. 28, 2019), *aff'd sub nom. Lambert v. Bd. of Trs.*, 793 F. App'x 938 (11th Cir. 2019) (citation and quotation marks omitted); *see also Jean v. Nelson*, 711 F.2d 1455, 1483 (11th Cir.1983) (discussing the Supreme Court's holding that plaintiffs challenging an action under § 1983 as discriminatory must establish that the action was at least motivated in part by a discriminatory purpose); *Nash v. Consol. City of Jacksonville, Duval Cnty.*, Fla., 895 F. Supp. 1536, 1541 (M.D. Fla. 1995), *aff'd sub nom. Nash v. Consol. City of Jacksonville*, 85 F.3d 643 (11th Cir. 1996) (explaining that liability cannot be imposed under § 1981 without proof of intentional discrimination and collecting cases).

Here, Plaintiff's allegations concern the City's "placement of ShotSpotter sensors," DE 5 ¶ 93, but Plaintiff's Complaint is silent as to any discriminatory intent, motive, or purpose by the City in its placement of the ShotSpotter sensors. Plaintiff has not pled any facts to indicate that the City's ShotSpotter placement "was, at least in part, 'because of,' and not merely 'in spite of'

its adverse effects upon an identifiable group." *Jean*, 711 F.2d at 1485 (quoting *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 n.24 (1979)).

Defendants' Motion is therefore **GRANTED** as to Plaintiff's equal protection claim against the City.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED**:

1. Defendants' Motion to Dismiss is **GRANTED** as to Count V (vicarious liability against the City), Count VI (negligent hiring, retention, and supervision against the City), Count VIII (unconstitutional policy or custom against the city) and Count IX (violations of 42 U.S.C. §§ 1981 and 1983 against the City).

2. Defendants' Motion to Dismiss is **DENIED** as to Count I (unreasonable seizure against Saunders), Count II (false imprisonment against Saunders), Count III (battery against Saunders), Count IV (negligence against Saunders), and Count VII (excessive force against Saunders).

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 22nd day of April, 2025.

>                       ROBIN L. ROSENBERG
>                       UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record